# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PLAZ HALL MURDOCK-ALEXANDER, JR., on behalf of himself and other similarly situated laborers,

        Plaintiff,

        v.

TEMPSNOW EMPLOYMENT AND PLACEMENT SERVICES, LLC and EMCO CHEMICAL DISTRIBUTORS, INC.

        Defendants.

Case No. 16-cv-5182

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Plaz Hall Murdock-Alexander, Jr. ("Plaintiff") filed this putative class action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, against Defendants TempsNow Employment and Placement Services, LLC ("TempsNow") and EMCO Chemical Distributors, Inc. ("EMCO") (collectively, "Defendants"), for alleged discriminatory hiring practices. Plaintiff, who is African American, claims that from May 2012 through the present, TempsNow refused to assign him and other African American laborers to its client companies, including EMCO, on the basis of race. On September 6, 2016, Defendants moved to: (1) strike Plaintiff's class allegations pursuant to Federal Rules of Criminal Procedure 23 and 12(f); and (2) dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6). TempsNow Mot. Dismiss [21]; TempsNow Mot. Strike [24]; EMCO Mot.

Dismiss [27]; EMCO Mot. Strike [28].  For the reasons explained below, Defendants' motions are granted in part and denied in part.

## I.    Background

### A.    Factual Allegations

Plaintiff's complaint sets forth the following relevant facts, which the Court accepts as true for the purposes of Defendants' motions to dismiss.  TempsNow operates a temporary employment agency with a branch office located in Waukegan, Illinois.  First Am. Compl. [36] ¶¶ 8, 10.  TempsNow provides third-party client companies, including EMCO, with low- and moderately-skilled laborers on a daily basis.  *Id.* ¶ 11.  The jobs for which TempsNow refers candidates, including those at EMCO, do not require special skills, training, or qualifications.  *Id.* ¶ 18.

Day laborers obtain work assignments from TempsNow by two methods.  First, laborers physically visit the Waukegan branch office, place their name on a sign-in sheet, and wait while daily work assignments are distributed in the order in which laborers arrive.  *Id.* ¶¶ 15, 20-23, 25-29.  Second, laborers provide their contact information to TempsNow and are contacted remotely—again in numerical order—when a job referral becomes available.  *Id.* ¶¶ 17, 30-35.

Plaintiff is African American.  *Id.* ¶ 7.  On multiple occasions from May 2012 through the present, Plaintiff and other African American laborers sought work assignments from TempsNow via both hiring methods (in-person and remote contact).  *Id.* ¶¶ 20-22, 31.  On days where Plaintiff and other African American laborers visited the Waukegan branch office, non-African American laborers

(specifically Hispanics) received work assignments before African American laborers, even though African American laborers were equally qualified and arrived at the Waukegan branch office earlier. *Id*. ¶¶ 25-29, 41. Furthermore, on the days Plaintiff and other African American laborers were *not* present at the Waukegan branch office, they were not contacted for work assignments. *Id*. ¶¶ 31-32. On these occasions, non-African American laborers were contacted before equally qualified African American laborers even though they had been seeking work for less time. *Id*. ¶¶ 33-35, 41.

## B. Plaintiff's EEOC Charges

On March 31, 2015, Plaintiff filed Charges of Discrimination against Defendants with the Illinois Department of Human Rights and the federal Equal Employment Opportunity Commission ("EEOC"). First Am. Compl. [36] Ex. A. Plaintiff alleged that TempsNow and EMCO each possessed "a policy and/or practice of preferring non-African American laborers over other, qualified African American laborers[.]" *Id*. Plaintiff further claimed that such policies and practices "had the effect of denying [Plaintiff] and a class of other, qualified African-American laborers an equal employment opportunity and resulted in systematic discrimination against African-American applicants and segregation of [Defendants'] workforce[s]." *Id*. On February 12, 2016, the EEOC issued Plaintiff Notices of Right to Sue. *Id*.

### C.    The Present Case

Plaintiff filed suit in this Court on May 12, 2016. Plaintiff asserts that TempsNow intentionally refused to assign him and other African American laborers to its client companies, including EMCO, on the basis of race. First Am. Compl. [36] ¶¶ 38-39. Plaintiff further claims that EMCO advised TempsNow of its preference against African American laborers and directed TempsNow not to assign African American laborers to its work site.[1] *Id.* ¶¶ 45-47. In his First Amended Complaint, Plaintiff raises six class action causes of action that, for the purposes of the present motions, can be subdivided into two categories: (1) disparate treatment claims under 42 U.S.C. § 1981 and Title VII against TempsNow (Counts I and III, respectively) and EMCO (Counts II and V, respectively); and (2) disparate impact claims under Title VII against TempsNow and EMCO (Counts IV and VI, respectively). *Id.* ¶¶ 54-92. Plaintiff seeks to certify a class that includes:

> All African-Americans who sought work assignments through the [TempsNow] Waukegan Branch Office and were eligible to work at one or more of [TempsNow's] client companies at any time between May 12, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at one of [TempsNow's] client companies.

*Id.* ¶ 51. Plaintiff also seeks to certify a separate subclass that includes:

> All African-Americans who sought work assignments through the [TempsNow] Waukegan Branch Office and were eligible to work at EMCO Chemical Distributors, Inc. at any time between May 12, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at EMCO Chemical Distributors, Inc. by [TempsNow].

*Id.*

---

[1] Plaintiff also alleges that, in the alternative, EMCO knew or should have known TempsNow engaged in discriminatory hiring practices. First Am. Compl. [36] ¶¶ 42-44.

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To survive a motion to dismiss, the claim must first comply with Rule 8 of the Federal Rules of Civil Procedure by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678.

Regarding Defendants' motions to strike, "if the defendant moves to dismiss the class allegations before discovery, the court must evaluate the motion using a standard similar to that of Fed. R. Civ. P. 12(b)(6)." *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013). In the context of a determination under Rule 23, the question is whether Plaintiff's allegations are sufficient to show that it is plausible that he will be able to satisfy the Rule 23 requirements after conducting discovery. *Id.*

## III. Analysis

### A. Defendants' Motions to Strike

Although class certification typically occurs "at a later stage in the proceedings," *Guzman v. N. Illinois Gas Co.*, No. 09-cv-1358, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009), a defendant is not precluded from filing a preemptive motion to strike or deny class allegations. Pursuant to Rule 23(c)(1)(A), at "an early practicable time" after a person sues as a class representative, "the court must determine by order whether to certify the action as a class action." In addition, under Rule 23(d)(1)(D), a court conducting a class action may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." More

generally, Rule 12(f) permits a court, either on motion or *sua sponte*, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage. *See, e.g. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[.]"); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (stating that, under Rule 23(c)(1)(A), a court "may deny class certification even before the plaintiff files a motion requesting certification"); *Wright v. Family Dollar, Inc.*, No. 10-cv-4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[A] motion to strike class allegations, made pursuant to [Rules 23(c)(1)(A) and 23(d)(1)(D)], is an appropriate device to determine whether the case will proceed as a class action.").

Nevertheless, while the decision to strike material "is within the discretion of the court," *Cannata v. Forest Pres. Dist. of Du Page Cty.*, No. 06-cv-2196, 2006 WL 2927604, at *6 (N.D. Ill. Oct. 11, 2006), "the general rule is that motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (involving motion to strike affirmative defenses); *Cannata*, 2006 WL 2927604, at *6 (applying general rule to motion to strike class allegations); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike class allegations are disfavored because a motion for class certification is a more

appropriate vehicle for the arguments [the defendant] advances[.]").  This is, in part, "because plaintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23.  Class action defendants, however, are often in control of the information plaintiffs need to meet that burden.  Thus, discovery is often appropriate, even necessary."  *Guzman*, 2009 WL 3762202, at *2 (internal citation omitted).

Given the general aversion to unripe motions to strike, a court should address class allegations at the pleading stage only "when the pleadings are facially defective and definitively establish that a class action cannot be maintained."  *Wright*, 2010 WL 4962838, at *1; *Kasalo*, 656 F.3d at 563 ("[A court] need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination."); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) ("If the plaintiff's class allegations are facially and inherently deficient . . . 'a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action.'") (quoting *Bohn v. Boiron, Inc.*, No. 11-cv-08704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013)).  On the other hand, "where the dispute is factual and discovery is needed to determine whether a class should be certified," *Wright*, 2010 WL 4962838, at *1, "a motion to strike the class allegations at the pleading stage is premature." *Buonomo*, 301 F.R.D. at 295; *Santiago v. RadioShack Corp.*, No. 11-cv-3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012) (same).  Because class certification "generally involves considerations that are enmeshed in the factual and legal issues

comprising the plaintiff's cause of action," striking class allegations at the pleading stage is generally inappropriate. *Boatwright v. Walgreen Co.,* No. 10-cv-3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011); *Ladik*, 291 F.R.D. at 272 ("[I]t is the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class[.]").

Here, Defendants' motions to strike are premature. Defendants argue that Plaintiff will be unable to meet Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement. *See* Fed. R. Civ. P. 23(a)(2) (requiring questions of law or fact common to the class); Fed. R. Civ. P. 23(b)(3) (requiring that common issues predominate over individualized issues and that class treatment be superior to other methods of adjudication). Regarding the former, Defendants claim that Plaintiff alleges sweeping discrimination by *all* of TempsNow's "client companies"; consequently, Plaintiff's case "will require an analysis of whether *each* client company engaged in a discriminatory practice" and "directed TempsNow to refrain from assigning African American laborers to work those companies." Mem. Supp. TempsNow Mot. Strike [25] 10. Defendants claim there can be no common answer to this inquiry because it "would depend on each client company's separate, individual action." *Id.*

Defendants misinterpret Plaintiff's First Amended Complaint. Plaintiff does not allege discrimination on the part of TempsNow's *client companies* (other than EMCO), but rather discrimination on the part of TempsNow *itself*. According to Plaintiff, "*TempsNow* engaged in assignment practices that discriminated against

Plaintiff and other similarly situated African American laborers on the basis of their race."  First Am. Compl. [36] ¶ 55 (emphasis added); *see also id.* ¶¶ 73-74 ("*TempsNow* engaged in a pattern and practice of intentional discrimination" against Plaintiff and other similarly situated African American laborers "because of their race.") (emphasis added).  Indeed, with the exception of EMCO, Plaintiff does not allege discriminatory practices on the part of *any* of TempsNow's client companies.  Thus, contrary to Defendants' assertions, common questions of law and fact may exist—namely, whether TempsNow engaged in a pattern or practice of denying employment to African Americans laborers because of their race, and if so, whether such conduct constitutes a violation of 42 U.S.C. § 1981 or Title VII.

Of course, Plaintiff does raise additional charges of discrimination against *one* of TempsNow's client companies, EMCO.  Consequently, separate issues may apply to African American laborers not assigned to work at that particular employer as opposed to TempsNow's *other* clients.  Plaintiff confronts this issue, however, by identifying a *separate* subclass of laborers who were eligible to work specifically at EMCO but did not receive that particular assignment.  *Id.* ¶ 51; *see Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012) ("[A]s long as each subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and each subclass otherwise satisfies the requirements for certifying a class, so that each could be the plaintiff class in a separate class action, there is no objection to combining them in a single class action.").

Turning to predominance, Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The rule permits class certification "only if the questions of law or fact common to class members 'predominate' over questions that are individual to members of the class."[2] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). While there "is no mathematical or mechanical test for evaluating predominance," the requirement is satisfied "when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Id*. at 814-15 (quotation omitted). To "put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id*. (quotation omitted). Analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184, (2011). If, "to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)). Individual questions, however, "need not be absent.

---

[2] Rule 23(b)(3) also conditions class certification on whether the class action device "is superior to other available methods for fairly and efficiently resolving the dispute in controversy." Fed. R. Civ. P. 23(b)(3). The Court "need not consider whether [Plaintiff has] shown superiority in this case," as the issue was not raised by either party. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.*

This legal standard further evinces why a motion to strike is premature at this stage. Particularly "when a court considers predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence. In most cases, some level of discovery is essential to such an evaluation." *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93 (3d Cir. 2011), *opinion reinstated in part*, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012). At present, however, the Court is confined to the allegations in the complaint and exhibits attached thereto. *McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir. 2006). These materials do not allow the Court to conduct the "rigorous analysis" required under Rule 23. *See Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir. 2003); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 883 (N.D. Ill. 2014) ("The questions of superiority and predominance are uniquely difficult to resolve based on the complaint alone."). Plaintiff "is therefore entitled to discovery before the defendants can attempt to bar the door to class certification." *Vee Pak, Inc.*, 68 F. Supp. 3d at 884.

Defendants' reference to *Wright v. Family Dollar, Inc.* is inapposite. In *Wright*, the plaintiff filed a class action alleging that her former employer failed to pay actual and overtime compensation to her and other non-exempt, store-level employees. 2010 WL 4962838, at *1. The complaint simultaneously alleged, however, that certain employees, including the plaintiff, were promoted to store managers during the relevant time period. *Id*. at *2-*3. On such facts, it was clear from the complaint that, as a matter of law, "the putative class was permeated by conflicts of interest," thus defeating Rule 23(a)'s "adequacy of representation" requirement. *Id*. at *2; *see* Fed. R. Civ. P. 23(a)(4) (requiring that the representative party fairly and adequately protect the interest of the class). Furthermore, the defendant raised an affirmative defense that managers who promoted off-the-clock work "did so without defendant's knowledge and in violation of its official policy." *Id*. at *3. Because this defense was "unique as to plaintiff and any other managers in the putative class," the pleadings showed that the plaintiff could not establish typicality. *Id*.; *see* Fed. R. Civ. P. 23(a)(3) (requiring that claims or defenses of representative parties be typical of the claims or defenses of the class). Here, Plaintiff's First Amended Complaint does not indicate any difference in employment status between Plaintiff and the other African American laborers of his putative classes. Moreover, at this stage, Defendants have not raised any affirmative defenses unique to Plaintiff or other putative class members. Consequently, this case falls beyond *Wright*'s import.

Defendants' reliance on *Ladik v. Wal-Mart Stores, Inc.* is equally unavailing. In *Ladik*, current and former Wal-Mart employees alleged that Wal-Mart engaged in widespread sex discrimination in "Region 14," a four-state area that included Wisconsin, Illinois, Indiana, and Michigan. 291 F.R.D. at 264. The district court granted Wal-Mart's motion to strike the class allegations because the plaintiffs failed to allege "a general policy of discrimination" or "specific employment practice" at the regional level that applied to the entire class. *Id.* at 270. Consequently, the plaintiffs failed to show how the incidents could "be tied together as part of a policy of discrimination." *Id.* In contrast, Plaintiff's allegations do not suffer from this impairment. First, the plaintiffs in *Ladik* attempted to certify a multi-state class of employees from hundreds of independent Wal-Mart locations; here, Plaintiff focuses on *one* TempsNow branch office and *one* of its third-party clients. Moreover, contrary to the allegations in *Ladik*, Plaintiff *does* allege general policies of discrimination on the part of both TempsNow and EMCO that purportedly apply to each putative class member.

*Baker v. Home Depot USA, Inc.* does not alter this conclusion. 2013 WL 271666, at *4-*5. While the court in *Baker* granted the defendant's motion to strike class allegations at the pleading stage, it relied heavily upon the principle of comity, in which courts "are required 'to pay respectful attention to the decision of another judge in a materially identical case.'" *Id.* at *5 (quoting *Smentek v. Dart,* 683 F.3d 373, 377 (7th Cir. 2012)). Specifically, the defendant "pointed to five other rulings made by various district courts across the country and the Illinois Appellate Court,

in which class certification ha[d] been denied in materially similar cases." *Id*. Defendants point to no such rulings here. To the contrary, Plaintiff's response references the opposite: a materially similar case in this district that denied a motion to strike at this preliminary stage. *See Lucas v. Ferrara Candy Co.*, No. 13-cv-1525, 2014 WL 3611130, at *8 (N.D. Ill. July 22, 2014).

The Court's ruling, of course, takes no position regarding Plaintiff's ability to satisfy Rule 23's requirements at a later date. Indeed, Defendants raise several material issues with Plaintiff's putative classes that must be addressed prior to certification. Whether Plaintiff can overcome these hurdles remains to be seen. At present, it is enough to say that, at this stage, "it is too early for the Court to perform the rigorous scrutiny Rule 23 requires." *Ferrara Candy Co.*, 2014 WL 3611130, at *8. This determination is consistent with the most factually analogous cases in this district. *See Vee Pak, Inc.*, 68 F. Supp. at 883; *Ferrara Candy Co.*, 2014 WL 3611130, at *8; *Boatwright*, 2011 WL 843898, at *1-*2. Consequently, Defendants' motions to strike, [24] and [28], are denied.

**B.    Defendants' Motions to Dismiss**

In addition to their motions to strike, Defendants' also move to dismiss Plaintiff's First Amended Complaint on the grounds that it fails to state plausible claims for relief, exceeds the scope of Plaintiff's original EEOC Charges, and violates Title VII's statute of limitations. The Court will address each objection in turn.

### 1.    Sufficiency of Plaintiff's Disparate Treatment Claims

To state a claim for disparate racial treatment under 42 U.S.C. § 1981 and Title VII, Plaintiff must plausibly allege that he was subjected to intentional discrimination based upon his race. *Chaib v. Indiana,* 744 F.3d 974, 981 (7th Cir. 2014). To do this, Plaintiff must set out factual allegations to show: (1) he is a member of a protected class; (2) he was subjected to an adverse employment act; and (3) there is a link between those two. *Cole v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 925, 931 (N.D. Ill. 2014) (citing *Martino v. W. & S. Fin. Grp.,* 715 F.3d 195, 201-02 (7th Cir. 2013)). The third element "need not be set out with plausible factual allegations, instead a plaintiff can rely on conclusory allegations that the first and second are linked by racial animus." *Id.* (citing *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013); *Carlson v. CSX Transp., Inc.,* 758 F.3d 819 (7th Cir. 2014); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008); *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 782 (7th Cir. 2007)).

Here, Plaintiff claims that he and other African American laborers were intentionally overlooked for temporary job assignments due to their race. First Am. Compl. [36] ¶¶ 7, 51-52, 55-58, 65-69, 73-74, 83-84. On these allegations, Plaintiff adequately raises disparate treatment by both TempsNow and EMCO. *See McDuffy v. Fed. Exp. Corp.*, 130 F. App'x 49, 50 (7th Cir. 2005) (finding African American plaintiff to be member of protected class)*; Davis v. U.S. Postmaster Gen.*, 190 F. App'x 874, 876 (11th Cir. 2006) ("[A]n adverse employment act is an ultimate employment decision, such as discharge or failure to hire.").

The Court rejects Defendants' challenge to Plaintiff's failure to provide the "specific dates or times" he was supposedly overlooked. *See* Mem. Supp. TempsNow Mot. Dismiss [22] 6. Inclusion "of a specific date may not be necessary to state a claim if the complaint alleges sufficient detail about an event to identify it." *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *see also Doe v. State of Arizona*, No. CV-15-02399-PHX-DGC, 2016 WL 1089743, at *4 (D. Ariz. Mar. 21, 2016) ("The Court is not persuaded that Plaintiff must allege specific dates or employee names to state a claim."); *Chester v. Adams Auto Wash, Inc.*, No. 5:13-CV-75-FL, 2014 WL 267095, at *2 (E.D.N.C. Jan. 24, 2014) ("[T]he failure to provide specific dates on which each alleged incident occurred [does not prevent the complaint from achieving its fundamental purpose of giving defendant fair notice], given that plaintiff has provided enough detail to permit defendant to identify many of the incidents. These specifics can be determined during discovery.") (internal citation omitted); *Stewart v. Caton*, No. CIV.A. 13-823, 2013 WL 4459981, at *11 (E.D. La. Aug. 16, 2013) (finding complaint which detailed plaintiff's "employment, her termination, and the harassing conduct" is sufficient to state a claim, "despite the fact that she [did] not include the specific date of one of the events described"); *Shales v. Schroeder Asphalt Servs., Inc.*, No. 12-cv-6987, 2013 WL 2242303, at *3 (N.D. Ill. May 21, 2013) (finding that plaintiff was not required to allege specific dates under Rule 8).

## 2.    Sufficiency of Plaintiff's Disparate Impact Claims

Disparate impact claims "differ from disparate treatment claims under Title VII because disparate treatment claims require proof of intentional discrimination." *Adams v. City of Indianapolis,* 742 F.3d 720, 731 (7th Cir. 2014). In contrast, disparate impact claims involve employment practices that "fall more harshly on one group than another and cannot be justified by business necessity." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977)). A disparate impact claim "can be based on *any* employment policy that disproportionately and negatively affects members of one of Title VII's protected groups," *Von Behren*, 2014 WL 6819538, at *4 (emphasis added), not just a "facially neutral policy." *Adams*, 742 F.3d at 731.

To survive a motion to dismiss, a disparate impact claim must: (1) identify a specific employment practice; (2) allege its causation of the disparate impact; and (3) give Defendants fair notice of the claim. *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011). The claim "must contain sufficient facts under *Twombly* and *Iqbal* that plausibly demonstrate an employment policy or practice has caused a 'relevant and statistically significant disparity' between members of affected classes." *Lucas v. Ferrara Candy Co.*, No. 13-cv-1525, 2014 WL 3611130, at *3 (N.D. Ill. July 22, 2014) (quoting *Adams*, 742 F.3d at 733). At this stage, however, Plaintiff need not allege "percentages, statistics, or data" demonstrating an employment policy's disproportionate effect. *McQueen*, 803 F. Supp. 2d at 906; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002) (noting that the

Supreme Court "has never indicated that the requirements for establishing a prima facie case under [Title VII] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005) ("A Title VII plaintiff need not set forth allegations of a prima facie case in the complaint."); *Jenkins v. New York City Transit Auth.,* 646 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."); *Emiabata v. Marten Transp., Ltd.,* 574 F.Supp.2d 912, 917 (W.D. Wis. 2007); *O'Neill v. Gourmet Sys. of Minn., Inc.,* 219 F.R.D. 445, 456 (W.D. Wis. 2002). Rather, Plaintiff may rely "on a variety of statistical methods and comparisons" to support his claims. *Adams*, 742 F.3d at 733. At this preliminary stage, "some basic allegations of this sort will suffice." *Id.*

Here, Plaintiff sufficiently alleges disparate impact claims against both Defendants. Plaintiff identifies specific discriminatory employment practices: TempsNow's "preference for assigning Hispanic laborers over African American workers to work at its third party clients" and EMCO's "policy and practice of hiring Hispanic laborers over African American laborers" through TempsNow. First Am. Compl. [36] ¶¶ 79, 88. Plaintiff further alleges that the inability of African American laborers to obtain work assignments is a "direct and proximate result" of these hiring methods. *Id.* ¶¶ 79, 90. These allegations adequately put Defendants on notice of Plaintiff's claims. Although Defendants attacks Plaintiff's failure to allege the precise racial makeup "of the purported labor pool in Waukegan," or the

"percentage of Hispanic laborers that were purportedly assigned instead of African American laborers," Mem. Supp. TempsNow Mot. Dismiss [22] 9-10, "there is no reason [Plaintiff] would have this kind of statistical evidence yet." *Mata v. Ill. State Police,* 00-cv-0676, 2001 WL 292804, at *4 (N.D. Ill. Mar. 22, 2001). Plaintiff does provide rough approximations; during days he was physically present in the Waukegan branch office, about one-third of job-seeking laborers were African American. First Am. Compl. [36] ¶ 24. In short, Plaintiff "has mustered what he could to put in a complaint," *Mata,* 2001 WL 292804, at *4; "better data might be gathered during discovery." *Bennett v. Schmidt,* 153 F.3d 516, 519 (7th Cir. 1998).

### 3. The Bounds of Plaintiff's EEOC Charges

Defendants contend that Plaintiff's EEOC Charges do not support the disparate impact claims asserted in his First Amended Complaint. *See Padron v. Wal-Mart Stores, Inc.,* 783 F. Supp. 2d 1042, 1049 (N.D. Ill. 2011) ("Plaintiffs cannot bring claims not included in the EEOC charge unless the claim reasonably could be expected to grow out of an EEOC investigation of the charge.") The Court disagrees. Plaintiff's EEOC Charges specifically reference TempsNow's and EMCO's respective "policy and/or practice of preferring non-African American laborers over other, qualified African American laborers." First Am. Compl. [36] Ex. A. at 4, 7. In a case "where the alleged policy is to prefer one race over another, the disparate impact can be reasonably inferred simply from the existence of the policy." *Lucas v. Vee Pak, Inc.,* 68 F. Supp. 3d 870, 879 (N.D. Ill. 2014). Plaintiff's Charges, however, go even further, and allege that such policies "have had the effect

of denying [Plaintiff] and a class of other, qualified African-American laborers an equal employment opportunity and resulted in systematic discrimination against African-American laborers and segregation of its workforce." *Id.* This "fairly encapsulates" a claim of disparate impact. *Id.*; *see also Lucas v. Ferrara Candy Co.*, No. 13-cv-1525, 2014 WL 3611130, at *4 (N.D. Ill. July 22, 2014) ("Plaintiffs' EEOC charges state that Defendants' hiring and assignment policies have 'resulted in systematic discrimination against African American applicants,' 'while less qualified non-African American applicants' have been assigned to work at Ferrara. These allegations are sufficient to encompass claims of disparate treatment and disparate impact.")

### 4. Timeliness

#### a) Events On or After June 3, 2014

Finally, Defendants aver that Plaintiff's Title VII claims all fall outside the statute's 300-day charging window. Mem. Supp. TempsNow Mot. Dismiss [22] 14. Under Defendants' theory, Plaintiff's Title VII claims may only cover discriminatory acts occurring on or after June 3, 2014, but Plaintiff does not allege that he sought a job assignment after that date. *Id.*

Defendants are correct that, generally, individuals wishing to challenge an employment practice under Title VII must first file a charge with the EEOC within a specified period, and that, if an employee fails to do so, he or she may not challenge that practice in court. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 623-24 (2007), *superseded by statute with respect to compensation practices*,

Pub. L. No. 111–2, 123 Stat. 5 (Jan. 29, 2009).  In Illinois, the charging period is 300 days.  *Groesch v. City of Springfield*, 635 F.3d 1020, 1024 n.2 (7th Cir. 2011).  Here, Plaintiff filed his EEOC Charges on March 30, 2015.  First Am. Compl. [36] Ex. A. Therefore, as Defendants allege, Plaintiff's 300-day limitation period extends backwards to June 3, 2014.

Contrary to Defendants' assertions, however, Plaintiff in fact alleges discriminatory acts within that timeframe.  Although Plaintiff claims he sought work *beginning* in May 2012 (a date well before the 300-day window), he also maintains that Defendants' refusal to hire occurred on "multiple occasions" "*through the present*."  First Am. Compl. [36] ¶¶ 1, 19-20, 22, 24-25, 31, 51-52 (emphasis added).  Plaintiff further asserts that Defendants' actions were part of ongoing "policies and practices."  *Id*. at Ex. A.  From such allegations, it is reasonable to infer that portions of Plaintiff's complaint fall within Title VII's limitation period.  That other incidents of discrimination may have also occurred *before* June 3, 2014 does not alter this analysis.  There "is no rule that a plaintiff who has been repeatedly discriminated against by [his] employer cannot challenge any of the discriminatory acts under Title VII unless [he] files [his] EEOC charge within 300 days after the first such act."  *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014).  Therefore, discriminatory acts by TempsNow and EMCO *after* June 3, 2014 remain timely and actionable.

### b) Events Before June 3, 2014

Given the nature of the Plaintiff's allegations, however, the Court cannot rest there.  It must also consider the timeliness, if any, of acts that occurred *prior* to June 3, 2014.  Here, Plaintiff finds limited shelter under the continuing violation doctrine.  The continuing violation doctrine "allows a plaintiff to get relief for [an otherwise] time-barred act by linking it with an act that is within the limitations period."  *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992).  Courts treat such a combination "as one continuous act that ends within the limitations period."  *Id.* Under this theory, Defendants' discriminatory actions prior to June 3, 2014 would remain actionable, despite falling outside the statutory window.

The issue, then, is which of Plaintiff's Title VII claims, if any, properly constitute "continuing violations."  To reiterate, Plaintiff brings four counts under Title VII: two alleging disparate treatment (Counts III and V), and two alleging disparate impact (Counts IV and VI).  The Court will address each category in reverse order.

### (1) Plaintiff's Title VII Disparate Impact Claims

In *National Railroad Passenger Corp. v. Morgan,* the plaintiff sued his former employer under Title VII, alleging that over the course of his five-year employment, he had been subjected to multiple "discrete" discriminatory and retaliatory acts, as well as a racially hostile work environment.  536 U.S. 101, 104-05 n. 1 (2002).  The alleged discrete acts included his hiring as an electrician's helper rather than as an electrician, the employer's refusal to allow him to participate in an apprenticeship

program, numerous written counselings, and his ultimate termination. *Id*. at 105 n. 1. While some of these acts occurred within 300 days of the plaintiff's EEOC charge, many took place prior to that time period. *Id*. at 106. The district court granted partial summary judgment to the employer, holding that all of the discrete incidents that occurred more than 300 days before the EEOC charge were untimely. The Ninth Circuit reversed, relying on a previous articulation of the continuing violation doctrine which allowed courts to consider otherwise time-barred conduct "as long as the untimely incidents represent[ed] an ongoing unlawful employment practice." 232 F.3d 1008, 1014 (9th Cir. 2000).

The Supreme Court reversed the Ninth Circuit's holding. In doing so, it rejected the notion that a series of "related discrete acts" could constitute one continuous "unlawful employment practice" for the purposes of the statute of limitations. 536 U.S. at 111. Instead, the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. The Court further classified specific employment acts it deemed "discrete": "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. According to the Court, each of these incidents, if discriminatory or retaliatory in nature, "constitutes a separate actionable unlawful employment practice." *Id*. (internal quotation omitted). Accordingly, only those acts that occur within 300 days before the day a plaintiff files his EEOC charge are actionable. *Id*. at 113.

Notably, however, the Court left the entirety of plaintiff's hostile work environment claim intact. The Court viewed hostile work environment claims as "different in kind from discrete acts" because their "very nature involves repeated conduct." *Id*. at 115. The alleged unlawful employment practice, therefore, could not "be said to occur on any particular day," but instead "occurs over a series of days or perhaps years." *Id*. Consequently, it does not matter "that some of the component acts of the hostile work environment fall outside the statutory time period." *Id*. at 117. So long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*.

In *Lewis v. City of Chicago*, the Court discussed similar issues of timeliness in the context of a disparate impact claim. 560 U.S. 205 (2010). In July 1995, the City of Chicago administered a written examination to applicants seeking to serve in the City of Chicago Fire Department. *Id*. at 208. Approximately six months later, in January 1996, the City announced that it would sort the test results into three tiers and begin drawing randomly from the top tier to fill open positions. *Id*. The City selected its first class in May 1996, and selected nine more classes over the next six years. *Id*. at 209. The plaintiff, an African American applicant who, due to his written examination score, was not hired as a candidate firefighter, filed an EEOC charge in March 1997, alleging that the City's practice of selecting applicants based on the July 1995 test results caused a disparate impact on African Americans. *Id*.

In a subsequent class action lawsuit, the City sought summary judgment on the ground that the plaintiffs' claims were untimely. *Id.* at 210. The District Court denied the motion, reasoning that the City's ongoing reliance on the 1995 test results constituted a "continuing violation" of Title VII. *Id.* The Seventh Circuit reversed because the named plaintiff's EEOC charge was filed more than 300 days after the City originally sorted the test scores in January 1996. 528 F.3d 488, 490 (7th Cir. 2008). According to the court, the subsequent hiring decisions were "the automatic consequence of the test scores rather than the product of a fresh act of discrimination." *Id.* at 491.

As in *Morgan*, the Supreme Court reversed the Seventh Circuit, though it based the decision on different grounds than those articulated by the district court. Rather than utilize the continuing violation theory, the Court highlighted the text of Title VII's disparate impact provision, which prohibits an employer from "*us[ing]* a particular employment practice that causes a disparate impact" on a prohibited basis. 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added). The Court stated that although the City "had *adopted* the eligibility list (embodying the score cutoffs) earlier and announced its intention to draw from that list, it made *use* of the practice of excluding those who scored [below the top tier] each time it filled a new class of firefighters." *Lewis*, 560 U.S. at 212 (emphasis added). In other words, consistent with *Morgan*, the Court interpreted Title VII's statutory language to mean that every "use" of an employment practice that causes a disparate impact "is

a separate actionable violation of Title VII" with its own statute-of-limitations clock." *Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135, 158 (2d Cir. 2012).

Applying *Morgan* and *Lewis* to this case, each alleged failure of Defendants to hire Plaintiff, if true, constituted a separate actionable unlawful employment practice. As a result, Plaintiff had 300 days to challenge each respective hiring decision. This is true even if Plaintiff employs the disparate impact method of proof. Consequently, Plaintiff's claims of disparate impact (Counts IV and VI) are dismissed to the extent they are based on acts that occurred before June 3, 2014.

### (2) Plaintiff's Title VII Disparate Treatment Claims

Turning to Plaintiff's disparate treatment claims, it is significant that Plaintiff alleges not just discrete acts of discrimination, but rather a "pattern and practice" on the part of the respective Defendants. First Am. Compl. [36] ¶¶ 73-74, 83-84. Pattern-or-practice claims represent a separate theory of intentional discrimination. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Notably, the *Morgan* Court expressly stated that its ruling did not address whether the continuing violation doctrine could be applied to "pattern-or-practice" claims, 536 U.S. at 115 n. 9, and the issue remains an open question in the Seventh Circuit. The uncertainty derives from that fact that, while pattern-or-practice claims may not necessarily be "based on the cumulative effect of individual acts," *id*. at 115, "their very nature," like hostile work environment claims, "does involve repeated conduct." *Guzman v. N. Illinois Gas Co.*, No. 09 C 1358, 2009 WL 3762202, at *3 (N.D. Ill. Nov. 6, 2009). That is, such claims "require a 'showing that an employer

regularly and purposefully discriminates against a protected group.'" *Puffer*, 675 F.3d at 716 (quoting *Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL–CIO v. Ward,* 978 F.2d 373, 378 (7th Cir. 1992)). Plaintiff must prove that discrimination "was the company's standard operating procedure—the regular rather than the unusual practice." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977); *see also Ward*, 978 F.2d at 378 (in assessing liability of a pattern-or-practice claim, "the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking").

Pattern-or-practice suits proceed in two stages. First, a plaintiff has the preliminary burden of demonstrating that unlawful discrimination "has been a regular procedure or policy followed by an employer or group of employers." *Int'l Bhd. of Teamsters*, 431 U.S. at 360. At this initial "liability" stage, a plaintiff is not required to offer evidence that each putative class member was a victim of a defendant's discriminatory policies. *Id.* Rather, the plaintiff's burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the plaintiff's proof "is either inaccurate or insignificant." *Id.* If an employer fails to rebut the inference that arises from the plaintiff's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. *Id.* at 361. Without any further evidence, a finding of a pattern or practice justifies an award of prospective relief. Such relief "might take the form of an injunctive order against continuation of the discriminatory practice,

an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order necessary to ensure the full enjoyment of the rights protected by Title VII." *Id.* (internal quotation omitted).

When a plaintiff seeks individual relief for the victims of the discriminatory practice, however, a court must usually conduct additional proceedings to determine the scope of individual relief (commonly referred to as the "remedial" stage). *Id.* At that stage, a finding of a pattern or practice of discrimination will support an inference "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id.* at 362. The plaintiff "need only show that an individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id.* The burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. *Id.*

In *Guzman*—also from this district—the court, after acknowledging the open question left by *Morgan*, held that the continuing violation doctrine can apply in pattern-practice cases under Title VII. 2009 WL 3762202, at *3. Like Plaintiff here, the plaintiff in *Guzman* alleged that his employer repeatedly denied employment opportunities to him and other Hispanic co-workers on the basis of race. *Id.* at *1. The defendant moved to dismiss certain claims it believed to be time-barred. *Id.* Rejecting the defendant's motion, the court stated that insofar as the plaintiff raised a pattern-or-practice claim, "the continuing violations doctrine will allow [the plaintiff] to rely on events that occurred outside of the relevant

statutory periods in support of that claim." *Id*. at *4. Specifically, the court permitted the plaintiff and his putative class to rely on events occurring outside of the relevant statutory periods "in order to prove that a pattern or practice *existed*" (in other words, during the liability stage of litigation). *Id*. at *5 (emphasis added). If successful, the class was further allowed to "pursue prospective relief and use the resulting inference in their favor in the second stage of trial." *Id*. The court went on to say, however, that it would not apply the continuing violation doctrine "in such a way as to save [the plaintiff's] *individual* claims to relief for any wrongs he suffered as a result of discrete acts that occurred outside of the relevant statutory periods." *Id*. at *4. That is, during the remedial stage, the class was barred from basing individual claims for relief "on discrete discriminatory acts that occurred outside of the relevant statutory periods." *Id*. at *5. Furthermore, in the event that the plaintiff's pattern-or-practice claim proved unsuccessful, then pursuant to *Morgan*, claims based upon individual discrete acts faced similar time constraints. Nonetheless, in that scenario, while "there [would be] no pattern or practice from which to draw an inference of discriminatory intent," the plaintiff could use "evidence of earlier discriminatory acts as background evidence." *Id*.; *see Morgan*, 536 U.S. at 113.

The Court adopts the same structure here. Thus, to the extent Plaintiff and his putative classes (should they be certified) base their Title VII disparate treatment claims on a pattern or practice, they may rely on events before June 3, 2014 during the liability stage of litigation to prove that such a pattern or practice

existed.  Should they succeed, they may use the resulting inference in their favor during the remedial stage, but may not use pre-June 3, 2014 acts as the basis for individual claims for relief.  Moreover, should Plaintiff and his putative classes choose not to rely on a pattern-or-practice theory, claims based on individual discrete acts are subject to the same restriction.  The classes may, however, use evidence of untimely incidents as background evidence.

## IV.     Conclusion

Defendants' motions to strike Plaintiff's class allegations, [24] and [28], are denied.  Defendants' motions to dismiss, [21] and [27], are granted in part and denied in part.  Plaintiff's Title VII disparate impact claims (Counts IV and VI) are dismissed to the extent they are based upon discrete acts that occurred before June 3, 2014.  Regarding Plaintiff's Title VII disparate treatment claims (Counts III and V), to the extent Plaintiff and his putative classes (should they be certified) base their claims upon a pattern or practice, they may rely on events before June 3, 2014 during the liability stage of litigation in order to prove that such a pattern or practice existed.  Should they succeed, they may use the resulting inference in their favor during the remedial stage, but may not use pre-June 3, 2014 acts as the basis for individual claims for relief.  Moreover, should Plaintiff and his putative classes choose not to rely on a pattern-or-practice theory, claims based on individual discrete acts before June 3, 2014 are untimely and barred.  The classes may, however, use evidence of untimely incidents as background evidence.

Dated:  November 21, 2016

ENTERED:

John Robert Blakey
United States District Judge